**Sidney WONG, Plaintiff–Appellant,**

v.

**John STRIPLING, Etc., et al., Defendants–Appellees.**

No. 88–4778.

United States Court of Appeals, Fifth Circuit.

Aug. 28, 1989.

# 201

Michael R. Allweiss, Lowe, Stein, Hoffman & Allweiss, New Orleans, La., for plaintiff-appellant.

Robert H. Pederson and James A. Becker, Jr., Watkins & Eager, Jackson, Miss., for defendants-appellees.

Before CLARK, Chief Judge, and JOHNSON and SMITH, Circuit Judges.

CLARK, Chief Judge:

Sidney Wong appeals from the district court's dismissal of his § 1983 and § 1985 claims against Garden Park Community Hospital, a private institution, the executive director of the hospital, and various members of the medical staff and board of directors. We affirm, finding that Dr. Wong's complaint alleges no facts which, if proven, would support a finding of state action in the hospital's revocation of his staff privileges. Further, we find that Dr. Wong's complaint implicates the deprivation of no right which does not require state action as a component.

## Facts

Dr. Sidney Wong is a naturalized United States citizen of Chinese ancestry. He is also a licensed board-certified surgeon. His practice is limited to general and vascular surgery. From 1979 to 1984, Dr. Wong was a member of the medical staff at Garden Park Community Hospital in Gulfport, Mississippi. Garden Park is a private institution, owned and operated by Garden Park Community Hospital, Inc. On December 18, 1984, the executive committee of the hospital voted to suspend Dr. Wong's staff privileges pending a physical and psychiatric examination. The reasons discussed for the suspension included alleged improper admission of a patient, alleged improper taking of food from the hospital kitchen, and alleged refusal to meet with the hospital administrator to discuss complaints.

Dr. Wong requested that his suspension be heard by the Judicial Review Committee, which subsequently revoked his privileges and terminated his association with Garden Park Hospital. Dr. Wong sought review of the decision by the Appellate Review Committee. That committee affirmed the decision to revoke Dr. Wong's staff privileges.

Pursuant to Miss.Code Ann. § 73-25-95, Dr. Wong filed a complaint in the Chancery Court of Harrison County to secure judicial review of the hospital's decision. The Chancery Court ultimately determined that the hospital had complied with its bylaws in revoking Dr. Wong's privileges and that Dr. Wong had received due process. While the chancery court decision was pending, Dr. Wong brought this action in district court against Garden Park Hospital, the executive director of the hospital, and various members of the medical staff and board of directors. He sought a declaratory judgment that the Mississippi statutory scheme is unconstitutional, and damages under 42 U.S.C. § 1983 and § 1985 for alleged violations of his constitutional rights. He also brought various state law claims against the defendants.

The district court dismissed Dr. Wong's claims asserting denial of substantive and procedural due process, finding that these claims were barred by collateral estoppel. After a hearing on the issues remaining in the case, the district court dismissed the § 1983 and § 1985 claims. The court stated that there was insufficient evidence of a state action nexus to maintain a claim under § 1983. As to the § 1985(3) claims, the court held that the claims were predicated upon alleged violations of rights which also required state action for their infringement. Dr. Wong's pendent state law claims were also dismissed without prejudice.

## § 1983

Dr. Wong maintains that Mississippi's comprehensive scheme governing the sus-

pension, revocation, or restriction of hospital staff privileges creates a program whereby hospitals perform the traditional state function of sitting as a court of first impression. Miss.Code Ann. § 73–25–93 authorizes any hospital to suspend, deny, revoke, or limit the hospital privileges of any physician considered to be unqualified, so long as the hospital complies with its bylaws. Any person against whom disciplinary action is taken may appeal the decision to the chancery court. § 73–25–27, § 73–25–95. The scope of the review to be conducted by the chancery court is explained in *Mississippi State Board of Psychological Examiners v. Hosford*, 508 So.2d 1049 (Miss.1987): "The Chancery Court has no authority to proceed de novo. Rather, review is limited to the record which has been made before the Board." According to Dr. Wong, since the chancery court may review the decision only on the record made in the hospital administrative proceedings, the state has abdicated to private actors traditional state judicial functions.

■■■■ A claim for relief under 42 U.S.C. § 1983 must contain two elements: 1) that plaintiffs have been deprived of a right secured by the Constitution or laws of the United States; and 2) that the defendant acted under color of state law. In a case such as this, where the defendants are unquestionably private entities, two avenues exist by which state action may be found. A private entity may be deemed a state actor when that entity performs a function which is traditionally the exclusive province of the state. Alternatively, state action may be found where there is a nexus between the state and the action of the private defendant such that the action is fairly attributable to the state. Under this test, a finding of state action is justified " 'only where it can be said that the state is responsible for the specific conduct of which the plaintiff complains.' A state is not responsible for a private party's decisions unless it 'has exercised coercive power or has provided such significant encouragement, ... that the choice must in law be deemed to be that of the state.' " *Daigle v. Opelousas Health Care, Inc.*, 774 F.2d

1344, 1348–49 (5th Cir.1985) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982)). In this instance, the hospital's executive committee did not perform a traditional state function in revoking Dr. Wong's staff privileges. Nor do the facts alleged demonstrate that the statutory scheme mandated or even encouraged the action taken.

Clearly, private hospitals had at common law a right to revoke the staff privileges of physicians for good cause. This legislation simply authorizes action which is already legal, and requires additionally only that the hospital comply with its own bylaws in making staffing decisions. The appeal to the chancery court makes available to the physician a further review of the procedural fairness of the decision. The only question before that court is whether the hospital followed its bylaws. The statutory scheme does not foreclose an independent legal action to determine the propriety of the termination on the facts.

"Procedural regulations simply do not suffice to establish the degree of joint participation required to convert private action into state action." *Barnes v. Lehman*, 861 F.2d 1383, 1387 (5th Cir.1988). The Mississippi statute does not compel staff discipline or delegate any authority previously held exclusively by the state. The mere fact that the legislation authorizes the action taken and makes available an optional review of procedural fairness in the state court system does not constitute "state action" for purposes of 42 U.S.C. § 1983.

*§ 1985(3)*

In order to state a cause of action under 42 U.S.C. § 1985(3), a plaintiff must allege:

1) the defendants conspired

2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and

3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby

4) another is injured in his person or property or deprived of having and exer-

cising any right or privilege of a citizen of the United States; and

5) the action of the conspirators is motivated by a racial animus.

*See United Brotherhood of Carpenters & Joiners v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). In his complaint, Dr. Wong alleged that he was singled out for review, denied due process, and subjected to a double standard because of his race. The complaint expressly asserted that these acts violated Dr. Wong's constitutional rights including his first amendment right to freedom of association and fourteenth amendment rights to due process and equal protection.

The district court dismissed the claim, stating that it was predicated on violations of rights which had as a prerequisite state action. That court noted Dr. Wong, at oral argument, contended his complaint included an equal protection claim under the thirteenth amendment. The court rejected this argument because the complaint nowhere asserted a violation of the thirteenth amendment nor was an allegation of racial discrimination alone sufficient to invoke the thirteenth amendment. Dr. Wong renews this argument before this court.

■■■■ Assuming Dr. Wong's complaint gave notice that he invoked the thirteenth amendment, it appears from his allegations that he can prove no set of facts which entitle him to relief under § 1985(3). The thirteenth amendment provides:

Section 1: Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

Section 2: Congress shall have power to enforce this article by appropriate legislation.

The power to reach private conspiracies under § 1985(3) emanates from this amendment. Section 1985, however, does not itself provide substantive rights. The rights sought to be vindicated must be found elsewhere. According to Dr. Wong, the rights he sought to vindicate are contained within the thirteenth amendment. He admits that the thirteenth amendment does not guarantee any particular right except the right to be free from slavery. Dr. Wong maintains, however, that this guarantee, which encompasses protection from the badges and incidents of slavery, extends to any abuse predicated upon race. The proscription in the thirteenth amendment is a broad one, but no court has held that its words alone create a general right to be free from private racial discrimination in all areas of life.

Although the amendment speaks directly only to slavery and involuntary servitude, the Court has recognized that section 2 empowers Congress to define and abolish "the badges and the incidents of slavery." *Griffin*, 403 U.S. at 105, 91 S.Ct. at 1800. Dr. Wong does not assert a violation of any such law. Nor would the facts as set forth in the complaint, if proven, constitute a violation of any law of the United States which would entitle Dr. Wong to relief under § 1985(3). The only rights or privileges of United States citizenship which might have been violated by the hospital's actions are those under the first and fourteenth amendments. As the district court correctly observed, those rights protect against state, rather than private, action.

Section 1985(3) can provide a cause of action against purely private conspiracies. State action is not an essential element of a § 1985(3) claim. However, "when the alleged conspiracy is aimed at a right that is by definition a right only against state interference," the plaintiff must prove state involvement. *United Brotherhood of Carpenters & Joiners v. Scott*, 463 U.S. 825, 833, 103 S.Ct. 3352, 3358, 77 L.Ed.2d 1049 (1983). Since Dr. Wong's complaint does not encompass any form of state action, he has failed to state a claim under 42 U.S.C. § 1985(3).

*Due Process and State Law Issues*

■■■ Dr. Wong challenges the district court's dismissal of his due process claims on the basis of collateral estoppel and the dismissal of his pendent state law claims. Since we have concluded that this case does

**204**

not involve state action, there is no need to address the dismissal of the due process claims. Under these circumstances, the decision to entertain or dismiss the pendent state law claims is within the district court's discretion. Ordinarily, when the federal claims are dismissed before trial, the pendent state claims should be dismissed as well. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The district court did not abuse its discretion in this instance.

### Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.